(Reap. Dec. 8281)

INTERNATIONAL FORWARDING CO., INC., ET AL. *v.* UNITED STATES

Entry No. 747214, etc.

(Decided January 14, 1954)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement, filed under the provisions of section 501, as amended, of the Tariff Act of

1930, of certain leather sandals or huaraches exported from Mexico during the period from March 3, 1941, to March 30, 1943.

According to a statement of counsel for the defendant, made in open court, the appraised values (which are contended for by the defendant) were predicated upon both foreign and export values, which are defined in sections 402 (c) and (d), respectively, of the Tariff Act of 1930, as amended. I construe this statement to mean that the appraised values reflect a finding by the appraiser that there was no difference in price when the merchandise was offered for sale, in accordance with the definitions of foreign and export values, as set forth in the statute, for home consumption or for exportation to the United States.

It was also stated by counsel for the defendant in the brief filed in its behalf that the merchandise was appraised on the basis of "similar merchandise." This I construe to mean that appraisement was made upon a finding that "such" (i. e., identical) merchandise was not offered for sale either for home consumption or exportation to the United States, within the meaning of the statute.

It is the plaintiffs' position that there was no foreign value, within the meaning of the statute, for merchandise such as or similar to that there involved, and that the export values of "such" merchandise are the correct values for the merchandise at bar. It is claimed that, with some slight modification in certain cases, the entered values represent the export values of the merchandise.

From the positions of the parties, as above described, it can be taken that there is agreement that there was no foreign value for "such" merchandise. Assuming, without deciding, that there was an export value for "such" merchandise and a foreign value for "similar" merchandise, the higher of the two must be accepted as the value of the merchandise under the provisions of section 402 (a) (1) of the act, reading as follows:

SEC. 402. VALUE.

   (a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

   (1) The foreign value or the export value, whichever is higher;

     *       *       *       *       *       *       *

In the discharge of their burden of proving a *prima facie* case in support of their contentions, plaintiffs undertook to offer evidence by which they hoped to establish (1) that merchandise similar to that here involved was not at the times of exportation here pertinent freely offered for sale for home consumption in the foreign market and (2) the export values of merchandise "such" as that imported.

The plaintiffs' case in chief consists of documentary evidence in the form of the invoices, summary sheets, entries, and, where made, the amended entries, in the cases at bar, which were received in evidence as collective exhibits 1 to 7, inclusive, and an affidavit of one Jose

Palacios Norman, sworn to before the American consul at Guadalajara, Mexico, together with certain "exhibits" therein referred to, which were received in evidence as collective exhibit 8. Upon objection by counsel for the Government, certain portions of the affidavit, consisting of paragraphs 6 and 12 and the second and third sentences of paragraph 13, and exhibit "G," attached to the said affidavit, were excluded.

The evidence offered by the plaintiffs concerning the lack of a foreign value for huaraches similar to those here involved is contained in paragraph 3 of the affidavit of Jose Palacios Norman.

In the affidavit, Sr. Palacios Norman states that during the period from 1936 to 1944 he was engaged in the manufacture, production, local purchase, and sale of Mexican huaraches in the vicinity of Guadalajara, Jalisco, Mexico, and that he was the owner of the concern trading as "El Arte Tonalteca" and the Guadalajara Shoe Co., either of which is named in each of the invoices covering the importations here involved as the seller and shipper of the merchandise.

After indicating a considerable familiarity with the market in Mexico for huaraches at the times here pertinent, Sr. Palacios Norman deposes and says in paragraph 3 of his affidavit as follows:

3. That during the period from January 1941 through May 1943 I did not sell or offer for sale (under my own name, or that of El Arte Tonalteca, or that of the Guadalajara Shoe Company, or any other way) domestically in Mexico any of the same types or kinds of huaraches that I sold or offered for sale to the Wales Import Company, Inc. of 251 Fifth Avenue, New York [note — the actual importer and ultimate consignee of the merchandise here involved]. From my experience in following the Mexican huarache market and from contact with other wholesale producers and sellers, I am informed, and verily believe it to be true, that such and similar huaraches (as I sold to Wales Import) were not generally sold at wholesale domestically in Mexico by any other Mexican concerns. In any event, I am informed that any such domestic sales occurred only when Mexican wholesale exporters bought at lower prices (lower than the wholesale export prices) from other Mexican wholesalers to fill out a large export order, or only when Mexican retail outlets bought for the tourist trade similar merchandise at the prevailing wholesale export prices, which at no time were higher than the export prices for the usual wholesale quantities.

In view of the defendant's position, as heretofore stated, it would appear that there is no dispute that "such" merchandise was not freely offered for sale for home consumption in Mexico. Consequently, the first sentence of the foregoing paragraph does not affect the issues in controversy. However, with respect to the question of whether huaraches "similar" to those here involved were offered for sale in Mexico for home consumption, within the meaning of the statute, which question is in dispute and with which the remainder of the paragraph quoted above is concerned, it would appear that Sr. Palacios Norman bases his statements upon information and belief derived from two sources—his own experience "in following the

Mexican huarache market," and "from contact with other wholesale producers and sellers."

It is apparent that the statements above quoted are not clear as to how much of the affiant's knowledge was based upon personal experience and how much was imparted to him by the statements of others. A serious question exists as to whether the statements are on their face shown to be based upon hearsay, and, indeed, objection on that ground to the admission of the statements was made at the time of trial by counsel for the Government.

The question of the admissibility of the statements becomes academic, however, in view of the fact that examination of other evidence offered by the plaintiffs reveals contradictory statements made previously by the affiant.

As hereinbefore stated, plaintiffs offered in evidence each of the invoices covered by the entries of the merchandise involved. Those which are part of collective exhibits 2, 3, 4, 5, and 6 each contain on their face the following printed question: "Is such or similar merchandise offered or sold in the home market for home consumption?" to which the answer "Yes" was inserted in typewriting. The signature on each invoice immediately following the above is that of Sr. Palacios Norman, and in each case he executed the declaration of seller or shipper printed on the reverse side of each invoice. In each such declaration he declared "that all the statements contained herein and in such invoice are true and correct."

In the writer's opinion the probative value, if any, of the statements made in the affidavit with respect to the offer for sale of "similar" merchandise in Mexico for home consumption is destroyed by the contradictory and unexplained statements made with respect to a material fact on the invoices. While ordinarily the statements made on invoices would form no part of the record upon which the merits of the case are to be decided, it must be remembered that the particular invoices here referred to containing the statement quoted above were offered in evidence by the plaintiffs, who are, therefore, bound by what is contained in them. A careful examination of the remainder of the record fails to reveal any evidence which would warrant a finding that the plaintiffs overcame the presumption of correctness attaching to the value returned by the appraiser, which includes a presumption, among others, that merchandise similar to that here in issue was freely offered for sale, within the terms of the foreign value statute, for home consumption in Mexico.

On this state of the record, and in view of section 402 (a) (1), *supra*, the plaintiffs' other evidence with respect to the existence of a possible lower export value for "such" merchandise could not affect the final outcome.

On the entire record before me, I find as facts:

(1) That the merchandise consists of leather sandals or huaraches exported from Mexico during the period from March 3, 1941, to March 30, 1943, inclusive.

(2) That at the time of exportation of the merchandise to the United States, such merchandise was not freely offered for sale for home consumption in Mexico.

(3) That at the said times merchandise similar thereto was freely offered for sale for home consumption to all purchasers in the principal markets of Mexico, in the usual wholesale quantities, and in the ordinary course of trade.

(4) That the price at the said times at which similar merchandise was so freely offered, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the appraised value in each instance.

(5) That the price at the said times at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Mexico, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was no higher.

I conclude as matters of law:

I That the proper basis for the determination of the value of the merchandise is foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended, and

II That such value in each instance is the appraised value.