(Reap. Dec. 8599)

DAN BRECHNER, JACOB BRECHNER, JOSEPH BRECHNER, HERBERT BRECHNER, A CO-PARTNERSHIP DOING BUSINESS UNDER THE NAME AND STYLE OF DAN BRECHNER & CO. *v.* UNITED STATES

Entry No. W–05459–2, etc.

(Decided June 22, 1956)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

MOLLISON, Judge: These are appeals for reappraisement of the values of certain merchandise of various kinds exported from Japan in 1950. All of the merchandise was entered under so-called duress under the provisions of section 503 (b) of the Tariff Act of 1930, as in force and effect at the time of importation.[1] Each of the invoices involved shows a "first cost" price for the merchandise, alleged to represent the price paid to the manufacturer for the merchandise, and certain costs, charges, and expenses, including some or all of the following: Export packing, inland freight from the factories to Yokohama, storage, hauling and lighterage, insurance premium, petties, and consular invoice fee, alleged to have been incurred up to the time the merchandise was placed on board of the exporting vessels at Yokohama.

Some of the invoices also show a charge in the amount of 5 per centum of the "first cost," alleged to represent a buying commission

---

[1] Sec. 503. Dutiable Value.

\* \* \* \* \* \* \*

(b) ENTRIES PENDING REAPPRAISEMENT.—If the importer certifies at the time of entry that he has entered the merchandise at a value higher than the value as defined in this Act because of advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and if the importer's contention in such pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and if it shall appear that such action of the importer on entry was taken in good faith, the collector shall liquidate the entry in accordance with the final appraisement.

paid to the shippers as agents of the plaintiffs for services in purchasing the merchandise on behalf of the plaintiffs and handling all of the details incident to receiving the merchandise from the manufacturers, inspecting the same, and arranging for its exportation to the United States.

The entered value, made under duress, as hereinbefore noted, and the appraised value in each case equal the invoiced "first cost," plus packing, plus commission where stated, and plus the remaining charges, as invoiced, except the charge for consular invoice. Stated another way, the entered and appraised values equal invoiced f. o. b. Yokohama values, less only the charge for consular invoice.

In this proceeding, plaintiffs challenge the inclusion in the appraised value of the item for commission, where stated, and the so-called "export charges," consisting of inland freight, storage, hauling and lighterage, insurance premiums, and petties, wherever these or any of them appear on the invoices.

It is noted that the item of commission was treated on entry by the importer as dutiable and was not listed on the duress certificates as a duressed item. In view, however, of the provisions of House Joint Resolution No. 336, 72d Congress, First Session (47 Stat. p. 657), and the decisions thereunder, among which may be cited *United States* v. *Innis Speiden & Co.*, 23 C. C. P. A. (Customs) 4, T. D. 47653, making the basis of assessment of ad valorem duties in the case of merchandise entered under duress the final appraised value, and the requirement in 28 U. S. C. § 2631 that this court shall "determine the value" of the merchandise, the writer considers the issue as to the item of commission to have been validly raised and determinable in this proceeding.

It has been agreed by the parties that the correct basis of value for the merchandise in issue is export value, which is defined in section 402 (d) of the Tariff Act of 1930.

Counsel for the plaintiffs contend that, inasmuch as the appeals herein challenge only the items of commission and so-called "export charges," the situation is controlled by the decision in the case of *United States* v. *Fritzsche Bros, Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371. The ruling in that case, which, in turn, was based upon a ruling in the case of *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, is to the effect that an appeal for reappraisement may properly be limited by the appellant to a challenge of one or more of the items entering into an appraisement, in which case he is entitled to rely upon the presumption of correctness attaching to all other items entering into the appraisement.

The writer understands the ruling in the *Fritzsche* case to apply only in the situation where the issue of the challenged item or items does not bring into question the remaining items of the appraisement. Thus, in the *Fritzsche* case, the merchandise was entered at a unit value of $20 per ounce, plus packing, and was appraised at $20 per

ounce, plus 8.40108 per centum, plus packing. The 8.40108 per centum was an addition made for shrinkage during the voyage of importation. The importer challenged only that one item, and, inasmuch as the determination of that item would not raise any question as to the correctness of the other items of the appraisement, to wit, the $20 per ounce item or the item for packing, the importer was held to be entitled to rely upon the presumption of correctness as to the elements of value involved in those items.

An examination of the official papers in each case herein shows that no appraisement in the sense of the inscription of words or figures on the papers was made, but that on the summary sheet, customs Form 6417, a red-ink check mark was placed by the appraising officer in the column headed "APPRAISED." According to the printed matter included under the word "EXPLANATION" on the same sheet, such a check mark indicates that—

\* \* \* the appraised value agrees with the entered value as represented by the information set forth on the invoice and in any importer's notations endorsed thereon or attached thereto \* \* \*.

The importer entered the merchandise herein on the basis that the "first cost" or *per se* prices, as stated on the invoices, plus packing, represented the correct value, and claimed that the items of commission and "export charges" were nondutiable. The appraisement made by the appraiser, that—

\* \* \* the appraised value agrees with the entered value as represented by the information set forth on the invoice and any importer's notations endorsed thereon or attached thereto \* \* \*.

is, therefore, in effect an appraisement at invoiced "first cost" or *per se* prices, plus packing, plus the disputed additions for commission and export charges. Such an appraisement implicitly admits the presence of the elements of value, such as free offer to all purchasers, principal market, usual wholesale quantities, and ordinary course of trade, applying to the "first cost" or *per se* values and undisputed items, and the only issue involved in the case, in view of the limitation of the challenge made by the importer, is as to the propriety of the addition of the disputed items to that value. In other words, the real dispute is not as to the elements of value, but as to the inclusion or noninclusion of the disputed items in the price at which such or similar merchandise was offered for sale under the conditions specified in the statute. To succeed, it was incumbent upon the importer to establish that the offered prices did not include the disputed items. The rule of the *Fritzsche* case, therefore, applies herein.

In attempting to meet that burden, the plaintiffs herein have established that the merchandise involved was purchased for them in Japan by buying agents, who charged a commission for their services. The evidence as to exactly what took place in Japan was given chiefly

by one of the partners of the plaintiff firm. The gist of his testimony is that it was one of the functions of the agents to locate Japanese manufacturers who made merchandise of a type in which the plaintiffs were interested and initially to act as agent and translator in carrying on the negotiations for purchase.

The testimony indicates that the price which was finally agreed upon was in Japanese yen and did not include the disputed items, for the witness said—

He [the agent] would then take and convert the yen price into a dollar price and then add his charges, shipping charges and the commission and all the other charges to the price quoted by the manufacturer and then arrive at what we call an FOB price. (Tr. pp. 56–7.)

What followed thereafter does not seem to be in dispute, inasmuch as it is established both by the testimony offered on behalf of the plaintiffs and by an affidavit, offered in evidence by the defendant and marked exhibit D, of one Taro Matsuzaki, identified as the president of one of the agent firms in the case of the shipments involved herein. It appears that the agents took delivery of the merchandise and caused the same to be inspected, collected into shipments of a certain size or value, and prepared the invoices, and that all inland freight charges, insurance premiums, hauling, lighterage, storage, and other incidentals in connection with handling the shipments from the time that the merchandise left the factory until it was put aboard the steamer were paid by the agents, and, in turn, charged to the plaintiffs.

The evidence establishes that the practice of so dealing with and through agents was common to other American importing firms doing business with Japanese manufacturers of such or similar merchandise.

What has been established by the evidence herein is the practice which obtained in the purchase of merchandise such as or similar to that here involved at or about the time of exportation thereof. The evidence was not specifically directed to the shipments here involved, but it is clear that the merchandise in issue was purchased under the stated practice.

Taking up first the item of commission, it is established by the evidence offered by both the plaintiffs and defendant that the shippers of the merchandise involved were the buying agents of the plaintiffs, who charged and were paid a 5 per centum commission for their services as such. Such commissions constitute no part of the value of the merchandise for appraisement purposes. *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T. D. 40958.

As to the other disputed items, the writer is of the opinion that the record is sufficient to establish that the said charges were not part of the price at which the merchandise was freely offered for sale to all purchasers by the manufacturers thereof and that the practice in the offer of such or similar merchandise for sale in Japan was to offer it ex-factory, the buyer or his agent having the responsibility from that

point of effecting its carriage out of the country. The record shows that because of difficulties of language, and perhaps of custom, it was the general rule to repose great trust and responsibility in the buyer's agents. It seems that the buyer was generally interested only in the f. o. b. seaport cost to him, leaving to his agent the payment of considerable sums to various persons other than the seller in settlement of charges for inland freight, insurance premiums, lighterage, etc. The writer finds no reason to believe or assume that the agents in the cases at bar failed to discharge their duties.

Counsel for the defendant has alleged that the disputed items, other than commission, were excessive in amount, but failed to offer any evidence on the point. It is noted that the amounts of the charges were accepted and adopted by the appraiser as part of the appraised value. It would seem that, if the said charges were found to have been excessive at the time of appraisement, it was the duty of the appraiser so to find and to adopt as part of the appraised value only so much of the charges as were determined to be proper and correct. The plaintiffs' evidence indicates that the amounts of the charges, as stated on the invoices, were the amounts paid. Under the circumstances, the allegation as to excessiveness is considered to be without merit.

Upon the entire record before me, I find as facts:

1. That the various kinds of merchandise involved were exported from Japan at various dates in 1950.

2. That merchandise such as or similar thereto was not at the time of exportation of the involved merchandise freely offered for sale for home consumption in Japan.

3. That, at the time of exportation of the merchandise under appraisement, the price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, is the entered and appraised values, less the invoiced amounts for inland freight, storage, hauling and lighterage, insurance premiums, petties, and commissions, only in the cases where those items, or any of them, appear on the invoices.

I conclude as matters of law:

1. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the merchandise involved herein, and

2. That such value in each case is as set forth in finding of fact No. 3 above.

Judgment will issue accordingly.