(Reap. Dec. 10725)

Louis Goldey Co., Inc. v. United States

Entry No. 864867.

(Decided April 21, 1964)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

--WILSON, Judge: This appeal for reappraisement is from a finding of value made by the appraiser with respect to certain marble, exported from Italy on or about November 26, 1960, and entered at the port of New York.

The merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Section 402(b) of the Tariff Act of 1930, as amended, *supra*, reads as follows:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The parties herein are in agreement that export value, as above defined, is the proper basis for the determination of the value of the merchandise under consideration. Plaintiff, however, claims that a lower value than that at which the merchandise was appraised represents the export value of the merchandise. Specifically, the plaintiff maintains that an addition made by the appraiser of an item of "Transport & Pier Charges" to the appraised *per se* unit value is not properly a part of the value of the involved merchandise. Plaintiff introduced in evidence an affidavit (plaintiff's exhibit 1) of Salvatore Busuito, owner and manager of the firm of I. Musetti, Carrara, Italy, shipper of the involved merchandise. Mr. Busuito stated that, based upon his position and duties with said company, he had personal knowledge of the methods of sales made by the company to the United States and that the statements made in said affidavit are based upon such personal knowledge and/or the books and records of the shipper. The affiant further stated in part as follows:

2. That Louis Goldey Co., Inc., has purchased marble from us since 1959; that since the factory is located a good distance from the shipping ports, charges may vary if sailing from Leghorn or from Genoa, and are necessarily incurred in connection with the movement of the merchandise to the shipping port and the loading thereof onto the vessel; that as a matter of convenience, Louis Goldey Co., Inc., usually purchases on an F.O.B. vessel basis and at an F.O.B. vessel price, and we take the responsibility for transporting the merchandise to the shipping port and loading it on the vessel and pay the necessary charges out of our purchase price; that, however, at all times Louis Goldey Co., Inc., had the option of purchasing our merchandise on an ex factory basis, at a price correspondingly reduced by the amount of said transport and pier charges. That any other purchaser desiring to purchase our merchandise has had at all times the same option of purchasing F.O.B. vessel or Ex factory.

3.  That the invoices prepared by my company on shipments to Louis Goldey Co., Inc., accurately reflected the prices ex factory and the transport and pier charges associated with the inland movement and loading on board of the merchandise.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Mr. Louis Goldey, president of the importing company, testified on behalf of the plaintiff that price negotiations with the shipper were conducted on an f.o.b. shop (ex-factory) basis and that such was the case in the purchase of the merchandise at bar. Mr. Goldey further stated that he had received from the shipper a separate invoice for the involved shipment, listing "Transport & Pier Charges $295.55" (invoice number 54a/1960 marked "A") and that he had included such charges as part of the total remittance made by his company to the shipper (R. 4–5). Mr. Goldey further testified that his company remits on the last day of each month a lump sum payment for all invoices and statements of expenses received during the month (R. 6). There was received in evidence a blanket marine insurance policy covering all merchandise, including the importation at bar, purchased from the exporter and shipped from the shipper's warehouse to the importer's warehouse (plaintiff's exhibit 2 (R. 10)). The witness testified that the premiums covering said policy were paid by his company.

On cross-examination, Mr. Goldey testified that he had no bills from the transport company or from the pier as evidence of payment of the transportation charges, heretofore referred to. It further appears that the consular invoice covering the merchandise contains a statement to the effect that no sales were made at an ex-factory price (R. 18). The testimony of plaintiff's witness was to the effect that he negotiates with the shipper on the basis of the ex-factory price and adds the approximated charges to this price to make up the total remittance (R. 19), stating that "there are two prices, one f.o.b. shop, and one f.o.b. port." The witness agreed that the price he pays plus the charges equals the f.o.b. Leghorn or Genoa port of shipment price (R. 20).

Mr. Charles J. Scavo, customs examiner at the port of New York, testified that his advisory recommendation of value to the appraiser, which was adopted by the latter official, was based upon certain investigations made by him covering other merchandise such as here involved (R. 21–23). On cross-examination, Mr. Scavo testified that the involved merchandise was "Appraised at invoiced unit values plus item (X) shown on invoice marked 'A,' packed," stating, in this connection, that he put in the items for transport and pier charges, "as part of the appraised value" (R. 28). The witness explained that the merchandise was appraised by adding as charges 8 cents per square foot to each unit and that the appraisement consisted of the invoice ex-

factory price, plus the addition of 8 cents a square foot to the total number of square feet on the invoice (R. 30–31).

Basically, the issue in the case at bar is whether or not the items indicated as "Transport & Pier Charges" are properly part of the value of the involved merchandise. A fair interpretation of the record, in my opinion, is that appraisement of the merchandise was made at the invoiced ex-factory prices, plus the disputed charges. It would, accordingly, appear that the *per se* values are presumptively correct and that plaintiff's proof may be directed to establishing that the appraiser's addition of the charges in question to make market value was incorrect. In evaluating an appraisement made at "first cost" or *per se* prices, the court, in the case of *Dan Brechner et al.* v. *United States*, 36 Cust. Ct. 612, Reap. Dec. 8599 (affirmed in *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71), at page 615, stated:

* * * Such an appraisement implicitly admits the presence of the elements of value, such as free offer to all purchasers, principal market, usual wholesale quantities, and ordinary course of trade, applying to the "first cost" or *per se* values and undisputed items, and the only issue involved in the case, in view of the limitation of the challenge made by the importer, is as to the propriety of the addition of the disputed items to that value. In other words, the real dispute is not as to the elements of value, but as to the inclusion or noninclusion of the disputed items in the price at which such or similar merchandise was offered for sale under the conditions specified in the statute. To succeed, it was incumbent upon the importer to establish that the offered prices did not include the disputed items. * * *

See, also, *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145.

In the case at bar, in order to establish that the involved merchandise was sold to the importer at a price which did not include the charges in question, plaintiff must show by competent proof that the sales so made in this case were made in the "ordinary course of trade" and that such sales were made at an ex-factory price. The term "ordinary course of trade" means the conditions and practices which have been "normal" in the trade under consideration (section 402(f) (2) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956). In this connection, plaintiff's proof is to the effect that the sales to the importer were "usually" made on an f.o.b. vessel basis and at an f.o.b. vessel price; that, however, at all times, Louis Goldey Co., Inc., had the option of purchasing any merchandise on an ex-factory basis, at a price correspondingly reduced by the amount of said transport and pier charges (plaintiff's exhibit 1). The testimony of plaintiff's witness is to the effect that negotiations with the shipper are conducted and concluded in terms of factory prices and

that the inclusion of the shipping charges in the purchaser's total remittance for the goods is simply a matter of convenience for the parties concerned. However, in my opinion, this view is not adequately supported by competent proof on the part of the plaintiff.

The purported option given to the plaintiff by the manufacturer to purchase merchandise at an ex-factory price without, as in this case, any evidence of actual sales at that price, is insufficient in law, in my opinion, to establish an ex-factory price as the price at which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of business. Further, there is no competent evidence of sales or offers of sale being made on an ex-factory basis by other manufacturers or sellers of merchandise of the same class or kind as that here imported, so as to establish that merchandise such as is here involved was sold to all purchasers on an ex-factory basis, an element of proof which I am of opinion must be established in order to validate plaintiff's claim that the involved charges are not part of the value of the goods (section 402(f)(2) of the Tariff Act of 1930, as amended, *supra*).

The affidavit of Mr. Busuito recites in part that "any other purchaser desiring to purchase our merchandise has had at all times the same option of purchasing F.O.B. vessel or Ex factory." However, a finding of correct value cannot be predicated upon the existence of a hypothetical market. *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196. See, also, *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 CCPA 19, C.A.D. 118. Counsel for the plaintiff, in its reply brief, states that the question of the exclusion of inland freight and/or f.o.b. charges from statutory export value was not involved in the *Golding Bros.* or *Transatlantic Shipping* cases, *supra*. While this appears to be so, the importer in the case at bar still has the burden of establishing that merchandise of the class here involved was freely offered or sold on an ex-factory basis. The mere statement in the affidavit of plaintiff's witness that the manufacturer in this case was willing to sell to others on an ex-factory basis is not competent proof that the merchandise was so sold.

One of the factors supporting a conclusion that the charges here under consideration must be considered as part of the value of the merchandise are the statements contained in the special consular invoice (unmarked exhibit), received in evidence on motion made by the plaintiff, which statements contradict those made in plaintiff's exhibit 1 herein. In said special consular invoice, the manufacturer stated that the inland freight charge was included in the invoice price

or value and that no sales were made at an ex-factory price (paragraph 5 of the consular invoice in evidence). In the case of *International Forwarding Co., Inc., et al.* v. *United States*, 32 Cust. Ct. 577, Reap. Dec. 8281, the court, discussing a situation where statements made in an affidavit were contradictory to those made on an invoice, at page 580, stated:

In the writer's opinion the probative value, if any, of the statements made in the affidavit with respect to the offer for sale of "similar" merchandise in Mexico for home consumption is destroyed by the contradictory and unexplained statements made with respect to a material fact on the invoices. While ordinarily the statements made on invoices would form no part of the record upon which the merits of the case are to be decided, it must be remembered that the particular invoices here referred to containing the statement quoted above were offered in evidence by the plaintiffs, who are, therefore, bound by what is contained in them. * * *

In the case at bar, the circumstances, as set forth by the plaintiff in the consular invoice, negative, in my opinion, a finding that sales to the importer were made at an ex-factory price. Similarly, defendant's exhibit A, a copy of an invoice from the exporter to the importer herein covering a prior shipment, showing the conditions of sale as "FOB Steamer," indicates the usual practice of the manufacturer in the sale of such or similar merchandise.

On the basis of the record in this case and for all of the reasons hereinabove set forth, I find as facts:

1. That the merchandise consists of marble, exported from Italy on November 26, 1960.

2. Such or similar merchandise, at the time of exportation to the United States of the involved merchandise, was freely sold or offered for sale in the principal markets of the country of exportation, in the usual wholesale quantity and in the ordinary course of trade, for exportation to the United States.

3. That, on or about the date of exportation of the merchandise undergoing appraisement, the importer in this case usually purchased merchandise such or similar to that here involved at an f.o.b. vessel price.

I conclude as a matter of law:

1. That the facts fail to overcome the presumption of correctness which attaches to the appraised value.

2. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for the determination of the value of the merchandise in question.

3. That such value is the appraised value.

Judgment will be entered accordingly.