(A.R.D. 196)

LOUIS GOLDEY CO., INC. *v.* UNITED STATES

Entry No. 864867.

Second Division, Appellate Term

(Decided September 8, 1965)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the appellant.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before RAO and FORD, Judges;
RAO, C. J., concurring in the result

FORD, Judge: This is an application filed by the importer, pursuant to 28 U.S.C., section 2636, for review of the decision and judgment of a single judge sitting in reappraisement, holding the appraised values to be the proper dutiable values of the imported merchandise, in *Louis Goldey Co., Inc.* v. *United States*, 52 Cust. Ct. 521, Reap. Dec. 10725.

The merchandise involved herein consists of certain marble, exported from Italy, which was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, Public Law 927, 84th Congress, T.D. 54165, which basis the parties agree is correct. Appellant herein contends for a lower value under said basis by claiming that certain charges indicated on the invoice as "Transport & Pier Charges" are not properly part of the dutiable value, under section 402(b), which reads as follows:

EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in

the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Also pertinent herein is the definition contained in section 402(f), which reads as follows:

DEFINITIONS.—For the purposes of this section—
(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
    (A)   to all purchasers at wholesale, or
    (B)   in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*     \*     \*     \*     \*     \*     \*

An appraisal of the involved merchandise was made at the invoiced unit values, plus item X shown on invoice marked "A," packed. The invoice marked "A" is in the sum of $295.55 and covers the aforesaid "Transport & Pier Charges."

The record on behalf of the importer consists of the testimony of Louis Goldey and an affidavit of Salvatore Busuito, the owner and manager of I. Musetti, the shipper herein, which was received in evidence as plaintiff's exhibit 1, as well as the official papers, which were received in evidence without being marked. The Government presented the testimony of Charles J. Scavo, the customs examiner of marble for the port of New York, and an invoice, which was received in evidence as defendant's exhibit A.

Mr. Goldey testified that he regularly visited Italy for the purpose of purchasing marble and that the instant merchandise was purchased on an f.o.b. shop basis (ex-factory); that he received a separate invoice for the charges from the shipper; that a lump-sum payment was made at the end of each month for all invoices received during the month; that his firm had a blanket marine insurance policy covering merchandise from the shipper's warehouse to the importer's warehouse, which was received in evidence as exhibit 2.

On cross-examination, Mr. Goldey testified that he had no bills from the transport company or the pier company as evidence of payment of the transportation charges; that he agreed with the correctness of that portion of the affidavit of the shipper (plaintiff's exhibit 1), to the effect that his company usually purchased on an f.o.b. vessel basis, but that he at all times had the option of purchasing at an ex-factory price and that said option was open at all times to all other purchasers; that the consular invoice contained a statement that

no sales were made ex-factory. The testimony of Mr. Goldey was to the effect that he negotiates with the shipper on the basis of the ex-factory price and adds the approximated charges to this price to make up the total remittance. The witness agreed that the price he paid plus the charges equalled the f.o.b. port price. The affidavit, insofar as pertinent herein, reads as follows:

\* \* \* \* \* \* \*

2. That Louis Goldey Co., Inc., has purchased marble from us since 1959; that since the factory is located a good distance from the shipping ports, charges may vary if sailing from Leghorn or from Genoa, and are necessarily incurred in connection with the movement of the merchandise to the shipping port and the loading thereof onto the vessel; that as a matter of convenience, Louis Goldey Co., Inc., usually purchases on an F.O.B. vessel basis and at an F.O.B. vessel price, and we take the responsibility for transporting the merchandise to the shipping port and loading it on the vessel and pay the necessary charges out of our purchase price; that, however, at all times Louis Goldey Co., Inc., had the option of purchasing our merchandise on an ex factory basis, at a price correspondingly reduced by the amount of said transport and pier charges. That any other purchaser desiring to purchase our merchandise has had at all times the same option of purchasing F.O.B. vessel or ex factory.

3. That the invoices prepared by my company on shipments to Louis Goldey Co., Inc., accurately reflected the prices ex factory and the transport and pier charges associated with the inland movement and loading on board of the merchandise.

\* \* \* \* \* \* \*

Examiner Scavo testified that his advisory recommendation of value to the appraiser was based upon certain investigations made by him with regard to other merchandise sold by the shipper; that the appraiser accepted his recommendation of value. At that point, counsel for the importer conceded that there had been sales by the exporter on an f.o.b. shipping port basis to other purchasers.

The trial court, in its decision, correctly pointed out that the appraisement in this case, invoiced unit values, plus item X shown on invoice marked "A," packed, was severable, citing *Dan Brechner et al.* v. *United States*, 36 Cust. Ct. 612, Reap. Dec. 8599 (affirmed in *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71), and *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145. Particularly pertinent on the subject of severability of appraisement is the following discussion in *Supreme Merchandise* case, *supra*:

Moreover, the extent to which ex-factory sales need be proven depends upon the method employed to invoice the goods, and the way in which the appraiser makes his return of value. If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71; *United States* v. *Gitkin Co., supra* [46 Cust. Ct. 788, A.R.D. 132];

*Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627. Under the rule expressed in *United States* v. *Fritzsche Bros., Inc.*, 35 C.C.P.A. (Customs) 60, C.A.D. 371, a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States* v. *Dan Brechner et al., supra.*

From the foregoing, it is clear that the appellant may, by virtue of the severability of the appraisement, rely upon the presumption of correctness attaching to the finding of value by the appraiser as to all elements which are not contested. The only contested element herein is the inclusion or exclusion of the charges designated as "Transport & Pier Charges," which hereinafter will be referred to, for the sake of convenience, as "inland charges." Under this principle of law, it is incumbent upon appellant to establish that the merchandise is sold or, in the absence of sales, offered for sale at the factory at a price not including the "inland charges." We are constrained to disagree with the court below in evaluating the necessary proof, when it stated as follows:

In the case at bar, in order to establish that the involved merchandise was sold to the importer at a price which did not include the charges in question, plaintiff must show by competent proof that the sales so made in this case were made in the "ordinary course of trade," and that such sales were made at an ex-factory price. The term "ordinary course of trade" means the conditions and practices which have been "normal" in the trade under consideration (section 402(f) (2) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956). * * *

The purported option given to the plaintiff by the manufacturer to purchase merchandise at an ex-factory price without, as in this case, any evidence of actual sales at that price, is insufficient in law, in my opinion, to establish an ex-factory price as the price at which such or similar merchandise was freely offered for sale to all purchasers in the ordinary course of business. * * *

By virtue of the severability of the appraisement, it was unnecessary for appellant herein to have established "freely sold" or "ordinary course of trade." It is presumed that the appraiser has already found that said merchandise is freely sold in the ordinary course of trade, and the only burden on appellant is to establish sales at a price which does not include the "inland charges."

However, of prime importance in this matter is that the appraisement was made under section 402(b) of the Tariff Act of 1930, as amended, *supra*, which is subject to the definitions contained in said section and the language contained in section 402(f), where, in both subdivisions, *supra*, it explicitly states, "freely sold or, in the absence

of sales, offered for sale." This phrase is not ambiguous in its meaning. Where there are actual sales, such sales are controlling and offers may not be considered.

The record in the instant case establishes actual sales at f.o.b. port prices. The position of appellant that the option to purchase ex-factory or f.o.b. port was tantamount to an offer to sell at ex-factory may not be considered, if, in fact, such an option constitutes an offer, since we have actual sales. There is no evidence of actual sales made at a price not including the "inland charges." The evidence of negotiation by appellant with the shipper at ex-factory prices with the option to purchase either ex-factory or f.o.b. port and the evidence of the exporter contained in plaintiff's exhibit 1, are not sufficient in law to establish an ex-factory price in face of the facts of record of actual sales at f.o.b. prices and the lack of evidence of actual sales at ex-factory prices.

In view of the foregoing, we make the following findings of fact:

1. That the merchandise consists of marble, exported from Italy.

2. That such or similar merchandise was freely sold in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

3. That, on or about the date of exportation of the merchandise undergoing appraisement, there were actual sales at f.o.b. port prices.

The court, therefore, concludes:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended, *supra*, is the proper basis of value for determination of the value of the merchandise covered by the instant appeal for reappraisement.

2. That such values are the appraised values.

3. The decision and judgment of the trial court are affirmed. Judgment will be entered accordingly.

CONCURRING OPINION

RAO, Chief Judge: I concur in the result.