(R.D. 11598)

Louis Goldey Co., Inc., et al. *v.* United States

Entry No. 7893, etc.

(Decided December 5, 1968)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiffs.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Landis, Judge: Plaintiffs have filed these 40 appeals for reappraisement contending the appraisements are separable and that upon the basis of the proof offered the valuations fixed by the appraiser should have been on the basis of the invoice unit or ex-factory prices.

The appeals for reappraisement, consolidated for trial, involve marble door saddles and slabs exported from Italy in 1963, 1964, and 1965. The marble came into the United States at New York, Boston,

Philadelphia, Baltimore, Wilmington, and Charleston where it was appraised on export value basis, under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. That basis is concededly correct.

What plaintiffs dispute is an amount included in the appraised export value, nominally called inland charges, incurred in getting the marble from the factory in Italy to the vessel port and aboard the vessel. Plaintiffs claim that the inland charges are not part of dutiable export value, defined in section 402(b), as amended, as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The inland charges issue is clear cut in 27 of these appeals for reappraisement, in which counsel stipulated that the appraisements are:

* * * on the basis of invoiced unit value, plus inland freight and F.O.B. charges, or in any such similar language that those appraisements are separable, and that in arriving at the appraised F.O.B. values the appraiser added the amount of 8¢ per square foot to the invoice unit values as representing inland freight and other charges incidental to transporting the merchandise from the factory to the vessel for loading on board the vessel. [R. 11.]

In the remaining appeals for reappraisement, viz: the 11 New York appraisements,[1] Charleston appraisement (R65/2474), and Wilmington appraisement (R65/2731), which are stated in *per se* unit prices (as distinguished from the invoice unit prices, plus 8 cents, stipulated above) the issue is less clear cut and raises question whether the presumptions of the so-called separability rule are available to plaintiff in those appraisements.

The essence of the separability rule, in the context of the form of the stipulated appraisements, is that plaintiffs may rely on the presumption that the appraised invoice unit prices are correct as to all the statutory elements of value recited in section 402(b), as amended, *supra*, and need only negate the inland charges. *United States* v. *Tapetes Luxor S.A. et al.*, 54 CCPA 116, C.A.D. 921; *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914; *Pan*

---

[1] R65/5464, R65/8141, R65/8913, R65/11252, R65/11306, R65/12087, R65/13263, R65/16022, R65/19697, R65/19700, and R65/21164.

*American Import Corp.* and *M. H. Garvey Company* v. *United States*, 61 Cust. Ct. 619, A.R.D. 248. Should the New York, Charleston and Wilmington appraisements not be proved separable, then plaintiffs have the correspondingly greater burden, in those appraisements, of proving all the statutory elements of price as defined in section 402(b), as amended. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. Before considering the separability rule, therefore, as to the New York and kindred appraisements, it is necessary to weigh the proofs on the inland charges.

The record on the inland charges consists of testimony from Louis Goldey, the importer; the affidavit of Salvatore Busuito, owner and manager of I. Musetti, producer of the imported marble (exhibit 1); an I. Musetti invoice dated June 1960 (exhibit 2); and the record in *Louis Goldey Co., Inc.* v. *United States*, 52 Cust. Ct. 521, Reap. Dec. 10725, affirmed on review, *Id.* v. *Id.*, 55 Cust. Ct. 759, A.R.D. 196, incorporated herein. The incorporated *Goldey* case involved the same or similar marble, produced by I. Musetti, exported from Italy in November 1960. Mr. Goldey testified and Mr. Busuito also made affidavit in the incorporated case. Plaintiff, it should be noted, lost the incorporated *Goldey* case for failure to prove that the marble exported in 1960 was sold at a price that did not include the inland charges because, in the opinion written for the appellate term of the court:

The record in the * * * [incorporated case] establishes actual sales at f.o.b. port prices. The position of appellant that the option to purchase ex-factory or f.o.b. port was tantamount to an offer to sell at ex-factory may not be considered, if, in fact, such an option constitutes an offer, since we have actual sales. There is no evidence of actual sales made at a price not including the "inland charges." The evidence of negotiation by appellant with the shipper at ex-factory prices with the option to purchase either ex-factory or f.o.b. port and the evidence of the exporter contained in plaintiff's exhibit 1, are not sufficient in law to establish an ex-factory price in face of the facts of record of actual sales at f.o.b. prices and the lack of evidence of actual sales at ex-factory prices. [55 Cust. Ct. at page 764.]

The substance of the record here is not much different. Mr. Goldey testified that since his testimony in the incorporated case, the only change in the way he did business with I. Musetti was that the marble was now invoiced ex-factory, plus charges, rather than f.o.b. port, and that he paid for each shipment as invoiced rather than once a month for all shipments in the month. Neither of those business changes is legally sufficient proof that the marble could be purchased ex-factory without the inland charges. Mr. Goldey did attest, however, that he could have purchased the marble ex-factory without the charges. (R. 38.) Presumably he would have then had to arrange with some-

one other than the seller to get the marble from the factory to the vessel port and aboard for shipment to the United States. Mr. Busuito corroborates Mr. Goldey's testimony in his affidavit where he states that I. Musetti sells to Louis Goldey at an ex-factory price and charges extra for inland freight; that it offers its marble to all purchasers, for export to the United States, at ex-factory prices; that the costs from factory to vessel port are optional charges; and that any "purchaser desiring to take delivery ex-factory is free to do so, through a forwarding agent of his choice, and paying to * * * [I. Musetti] only the ex-factory price, net." (Exhibit 1.) Is the fact that plaintiffs and all others could have purchased the marble ex-factory without the charges legally sufficient of a price ex-factory, without the inland charges? I am of opinion that it is.

Defendant admits that, in its most favorable aspects, the record is *prima facie* sufficient of the fact that plaintiffs purchased from the manufacturer at ex-factory prices. (Defendant's brief, page 12.) But says defendant, there is no evidence that the manufacturer freely sold or offered its merchandise to all purchasers at ex-factory prices. Assuming defendant is correct in its assessment of the record, "[a]lthough there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by [plaintiffs], there need not have been such evidence, in view of the separability rule." *United States* v. *Chadwick-Miller Importers, Inc., et al., supra; Pan American Import Corp.* and *M. H. Garvey Company* v. *United States, supra.* Also Mr. Busuito's affidavit of the fact that any purchaser could buy the marble ex-factory without the inland charges is entitled to as much weight on that fact as on any other fact, namely, that plaintiffs could, or, as defendant puts it, did buy ex-factory.

The proofs and facts in this case are about what they were in *United States* v. *Tapetes Luxor S.A. et al.,* 54 CCPA 116, C.A.D. 921, where our court of appeals stated:

There is substantial evidence to support the conclusion that the United States customers could have purchased the merchandise at f.o.b. Texcoco prices with the option to designate Export Shipping or some other freight forwarder to handle the transportation from Texcoco to the United States. The letters of El Bordador offering the goods at such terms as an alternative to f.o.b. Laredo prices is significant in that respect. Also supporting that conclusion are the affidavits of some customers, submitted on behalf of the importers, asserting that they understood that they could purchase f.o.b. Texcoco. It is true there are other circumstances that tend to indicate that some customers may not have been informed of the option available to them and that a manufacturer's agent in the United States received commissions based on a percentage of the f.o.b. Laredo price. However, it is not in our

province to weigh those circumstances against the substantial evidence supporting the finding below. See *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, C.A.D. 783. [54 CCPA at pages 120, 121.]

Accordingly, I find and hold that, in those appraisements stipulated to be separable, the export value is the appraised invoice unit values, without the 8 cents added for inland charges.

The separability issue raised in connection with the New York appraisements, as I mentioned earlier, goes to the question of the presumptions available to plaintiff in those appraisements. That question was stipulated out in the conceded separable appraisements at presumptively correct ex-factory invoice unit prices, limiting dispute to the added charges.

On their face the New York appraisements, stated in *per se* unit prices, are not separable. This does not bar proof on trial of what the appraising officers in fact did in arriving at the appraised values. *Bud Berman Sportswear, Inc.* v. *United States*, 55 Cust. Ct. 574, Reap. Dec. 11056, affirmed on review, *United States* v. *Bud Berman Sportswear, Inc.*, 57 Cust. Ct. 733, A.R.D. 211, and on appeal, *Id.* v. *Id.* 55 CCPA 28, C.A.D 929. As the trial judge in *Bud Berman* stated:

* * * The burden which a plaintiff in a reappraisement case is required to assume is always onerous. If, without disturbing settled principles of law, the task can be lightened, the court should be inclined to favorable consideration of such an approach. It is the function of the court in these actions to determine the value of imported merchandise, and if there are reasonable ways of achieving that goal, they should be pursued. There can be little doubt in the instant case that the appraiser considered the ex-factory prices to be representative of the prices at which such or similar cotton shirts were freely sold to all purchasers for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade. And it is reasonable under the circumstances obtaining in this case to allow the plaintiff to rely upon those findings. [55 Cust. Ct. at page 585.]

Can there be any doubt in these New York appraisements that the appraiser adopted the ex-factory invoice unit prices as the starting point for valuation? Plaintiffs contend that, on the testimony of Commodity Specialist Charles J. Scavo, the New York examining officer, there is no doubt. Defendant argues contrary.

Mr. Scavo testified that the notations of value in the New York appraisements were made by him in his advisory capacity to the appraiser. (It is stipulated that the appraiser adopted and approved Mr. Scavo's notations, R. 55.) Mr. Scavo, obviously reluctant to prejudice the appraisements in terms of whether he arrived at the appraised *per se* unit prices by adding the amount of 8 cents to the invoice unit prices, testified somewhat equivocally. The one bit of his testimony that

is clear is his statement that "I have examined each of these documents [New York appraised invoices] and in each case I added to arrive at my appraised value f.o.b. packed. I added 8 cents *to each unit indicated on the invoice*." (R. 47, emphasis added.) I accept Mr. Scavo's testimony to show that the New York appraisements, while different in form from the stipulated separable appraisements, are of the same material substance, the appraiser, as it were, in each instance accepting the invoice ex-factory unit prices (defendant, as noted above, concedes that the imported *prima facie* purchased ex-factory) and adding 8 cents to cover charges f.o.b. vessel port. To conclude otherwise would be contrary to the spirit of *Bud Berman* and exalt mere form over substance. On authority of *Bud Berman*, the New York appraisements are separable and carry in them the same presumptions as the stipulated separable appraisements, namely, that the ex-factory invoice unit prices are correct. The only dispute is the 8 cents added for f.o.b. charges. It follows that, on this record, and as I found in the case of the stipulated separable appraisements, the export value of the New York appraised marble is the appraised value, less 8 cents.

Although neither side discusses the point, there is no evidence of record to impeach the Charleston (R65/2474) and Wilmington (R65/2731) appraisements. Those appeals for reappraisement are, therefore, severed from the consolidation of cases herein and ordered restored to the calendar at New York for all purposes.

I find as facts:

1. That the merchandise of these appeals for reappraisement consists of marble saddles and slabs exported from Italy in 1963, 1964, and 1965.

2. That the merchandise of these appeals for reappraisement was appraised on basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That in the appraisement of the merchandise on the basis of export value in these appeals for reappraisement, the appraisers added 8 cents to the ex-factory invoice unit prices to arrive at an f.o.b. price, packed.

4. That, at the time of exportation, all purchasers for export to the United States, could have purchased the merchandise of these appeals for reappraisement at the ex-factory invoice unit prices, without the 8 cents added in the appraisements set forth in finding 3.

I conclude as a matter of law:

1. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise in these appeals for reappraisement.

2. That the appraisements set forth in finding 3 are separable and that the ex-factory invoice unit prices, used to arrive at the appraised values on export value basis, are presumptively correct.

3. That, in these appeals for reappraisement, the export value of the merchandise appraised at places other than New York, is the appraised value without the 8 cents added and, in the New York appraisements, the export value is the appraised value less 8 cents.

Judgment will be entered accordingly.

(R.D. 11599)